

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| vs. § | Criminal Action No.: 1:06-01254-MGL-1 |
| § | |
| KELVIN BERNARD BADGER, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO REDUCE HIS SENTENCE UNDER THE FIRST STEP ACT**

**I.    INTRODUCTION**

Pending before the Court is Defendant Kelvin Bernard Badger's (Badger) supplemental motion to reduce his sentence under Section 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (the First Step Act). Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court Badger's motion to reduce his sentence will be granted.

**II.    PROCEDURAL HISTORY**

A jury convicted Badger of felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 1 or the firearm offense) and possession with intent to distribute a quantity of cocaine, fifty grams or more of crack cocaine, and a quantity of marijuana in violation of 21 U.S.C. § 841(b)(1)(A), (b)(1)(C), and (b)(1)(D) (Count 2 or the drug offense). On June 18, 2008, Judge Seymour sentenced him to a life sentence on the drug offense and a concurrent 120-month sentence

on the firearm offense, followed by ten years of supervised release. So far, Badger has served about 197 months of his sentence.

Based on previous motions under the First Step Act, Judge Seymour eventually reduced Badger's sentence to 300 months on the drug offense and eight years of supervised release. His projected release date is currently July 12, 2036.

Badger was charged in this case at the age of twenty-four. His previous convictions, for possession with intent to distribute marijuana and trafficking cocaine, occurred when he was seventeen and eighteen years old. According to the presentence investigation report (PSR), Badger attempted to conspire, during pretrial detention in this case, to kill the Barnwell County Sheriff's Deputy who arrested him.

Badger has participated in programming while at the Bureau of Prisons (BOP), such as anger management and parenting classes, as well as computer and business classes. His BOP records classify him as having a low risk of recidivism. But, Badger has been disciplined at BOP for possession of a cellphone, Suboxone, drugs, and alcohol.

Finally, Badger attaches character letters to his motion that indicate a strong family support system. He also has a robust family support system, as indicated by character letters from his parents and sister. Badger's sister has contacted several staffing agencies on his behalf in search of a job in the event of his release. The agencies have indicated they work with several companies who employ people with criminal records, and encourage Badger to apply.

Badger appealed the most recent amended judgment with the 300-month sentence, and the Fourth Circuit remanded in light of *Concepcion v. United States*, 142 S. Ct. 2389 (2022) (holding that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act).

The Clerk of Court reassigned the case to the undersigned Judge. The United States Probation Office filed a second amended sentence reduction report (SRR). Badger then filed the instant motion, the government responded, and Badger replied.

The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

**III.    STANDARD OF REVIEW**

Under the First Step Act, the Court "may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the [g]overnment, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Section 2 of the Fair Sentencing Act reduces the sentencing disparity between powder and crack cocaine, and Section 3 eliminates mandatory minimum sentences for simple possession. Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372.

Congress left the decision as to whether to grant a sentence reduction to the district court's discretion. *See* First Step Act § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

A covered offense "means a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222.

In considering a motion under the First Step Act, however, the Court must recalculate the guideline range and consider the 18 U.S.C. § 3553(a) factors of sentencing. *United States v. Chambers*, 956 F.3d 667, 672, 674 (4th Cir. 2020).

The Court "may then consider postsentencing conduct or nonretroactive changes [in the law] in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark[,]" *Concepcion*, 142 S. Ct. 2402 n.6, and must consider them if the parties raise them, *id.* at 2396. "By its terms, however, the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments." *Id.*

IV.     **DISCUSSION AND ANALYSIS**

As an initial matter, the parties agree with the SRR that Badger's guideline sentence for the drug offense, calculated "as if the Fair Sentencing Act's amendments had been in place at the time of the offense[,] *id.* at 2402 n.6, is 360 months to life. The Court thus adopts the SRR and uses this guideline as its benchmark.

The parties also agree that, had Badger been sentenced today, his sentencing guideline for the drug offense would be 120 to 121 months, due to the fact he would no longer qualify as a Career Offender under the guidelines, because Badger's previous cocaine trafficking offense was based on mere possession. This change, however, has not been made retroactive, so the Court is unrequired to apply it in this case. Because Badger has raised the argument, however, it must at least consider it. *Id.* at 2396.

Badger argues the Court should exercise its discretion to impose a sentence commensurate with this subsequent—albeit unrequired—change to the law and reduce his sentence to time served. The government, on the other hand, posits the Court should remain uninfluenced by the nonretroactive change and asks the Court to impose a sentence greater than time served. It recognizes, however, that considering the facts of the case the Court may decide to further reduce Badger's sentence, and leaves any reduction to the discretion of the Court.

As explained more fully below, the current guidelines indicate the present understanding of the relative seriousness of certain crimes and their likely impact on recidivism. To ensure Badger's sentence is fair, the Court determines consideration of a sentence below 360 months is appropriate.

The Court next turns to the Section 3553(a) to determine the appropriate sentence. The Section 3553(a) factors instruct the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) "the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes by the defendant;
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense] . . .
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The nature of Badger's offenses of conviction is undoubtedly serious, and the Court is concerned by his criminal history, as well as the allegations that Badger approached a cellmate to discuss logistics of killing the Barnwell County deputy who arrested him.

At Badger's original sentencing, he faced a mandatory life sentence. Therefore, neither his counsel nor the government addressed these facts in the PSR at sentencing. Nevertheless, Badger has failed, at any point, to object to these allegations. The Court is troubled by this conduct.

But, the Court notes that Badger's relative youth at the time of his arrest and conviction. As stated above, he was charged in this case when he was only twenty-four years old, and his previous drug convictions occurred when he was seventeen and eighteen years old. And, although the prior convictions are serious, they are relatively few. Further, changes to the controlling law delegitimize the policy considerations underlying Badger's designation as a Career Offender.

Moreover, much of Badger's postsentencing conduct is consistent with a reduced sentence. Badger has taken advantage of BOP programming, which will aid him upon release. Importantly, his BOP records classify him as having a low risk of recidivism. He also has a robust family support system, as indicated by the strong character letters attached to his motion. Those letters emphasize the change Badger's family members have seen in him, including his improved ability to handle setbacks. Finally, he has concrete plans for obtaining employment upon release.

On the other hand, the Court is concerned by Badger's disciplinary infractions at the BOP. The most recent one, however, evidently occurred more than three years ago. Although this disciplinary conduct warrants a sentence higher than 121 months, the balance of his conduct shows he will pose no danger to society upon release. Therefore, a time-served sentence is appropriate.

Given Badger's youth at the time of the offenses and the subsequent changes in the guidelines, the Court determines a sentence of time served would serve the desired deterrent effect and also allow Badger the opportunity to become a lawful, productive member of society. A reduced sentence would also avoid unwarranted sentencing disparities with others convicted more recently of the same offense with the same criminal history.

In sum, the balance of the 3553(a) factors favors a sentence commensurate with the current sentencing guidelines for Badger's offense, but which takes into account his concerning pretrial conduct and post-judgment disciplinary infractions. An approximately sixteen-and-a-half-year

(198-month) time-served sentence—below the 360-month benchmark but more than six years above the 120-to-121-month nonretroactive current guideline—effectively balances the factors on each side of the scale.  It is substantial, will serve the goals of sentencing, provide just punishment, and promote respect for the law.

## V. CONCLUSION

For the reasons stated above, it is the judgment of the Court Badger's motion to reduce his sentence is **GRANTED**.  Specifically, Badger's sentence is reduced to **TIME SERVED**.  All other terms of the most recent amended judgment shall remain the same.

This order is **STAYED** for up to fourteen days to ensure Badger's safe release, to verify his release plan, and to permit appropriate travel arrangements to his approved residence.  Badger shall be released as soon as his release plan is verified by probation, appropriate travel arrangements are made, and it is safe for Badger to travel.  There shall be no delay in ensuring travel arrangements are made.  If more than fourteen days are needed to make appropriate travel arrangements, ensure Badger's safe release, or verify his release plan, the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

Signed this 31st day of January 2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis  
MARY GEIGER LEWIS  
UNITED STATES DISTRICT JUDGE